**GARDEN CITY BOXING CLUB, INC., as Broadcast Licensee of the June 8, 2002 Lewis/Tyson Program, Plaintiff,**

v.

**Michael STONE, et al., Defendant.**

**No. CIV.A.02–1655–MPT.**

United States District Court, D. Delaware.

Sept. 11, 2003.

Julie Cohen Lonstein, Esquire, Low-Stein Law Office, P.C., Ellenville, NY, for plaintiff.

Jeffrey S. Welch, Esquire, Garvan McDaniel, Esquire, Welch & Associates, Wilmington, DE, for Defendants.

### MEMORANDUM

THYNGE, United States Magistrate Judge.

## I. Introduction

This suit involves allegations of broadcast piracy under 47 U.S.C. §§ 553 and 605. Presently before the court is plaintiff's motion for summary judgment. For the reasons set forth herein, the court denies plaintiff's motion.

## II. Background

Plaintiff, Garden City Boxing Club, Inc. ("Garden City") contracted with Top Rank, Inc. ("Top Rank"), for the exclusive rights to broadcast the Lennox *Lewis v. Mike* Tyson boxing match on June 8, 2002. Consequently, any establishment seeking to show the fight in Garden City's geographic area, was required to purchase the broadcasting rights from Garden City. Garden City alleges that defendants showed the fight without seeking its permission, in violation of sections 553 and 605.

## III. Parties Positions

Plaintiff maintains that defendants aired the fight in Stoney's Pub, a fact which is not in dispute. In support, plaintiff cites to defendants' response to request for admissions, and their answers to plaintiff's first set of interrogatories, which reveal that defendants broadcasted the Tyson/Lewis fight.

Plaintiff further asserts that when obtaining cable services, defendants, specifically Michael Stone, intentionally misrepresented that the DirecTV service was being purchased for his home, rather

than for his business, Stoney's Pub and that such misrepresentations were made for Stone's commercial financial gain. Plaintiff relies on defendants' DirecTV records, alleging the records show that defendants intentionally registered Stoney's Pub as a residence, rather than as a commercial establishment. Defendants do not dispute that the pub was listed as a residential account, but deny that the error was intentional. According to plaintiff, defendants' action by "misregistering" the DirecTV account constituted a "modification" under § 605(e)(4).

Defendants fervently dispute plaintiff's allegations. In his affidavit, Stone admitted that he arranged to have DirecTV installed in Stoney's Pub, but asserts that he never intended the account to be registered as a residential account. According to Stone, after purchasing the satellite equipment at Radio Shack, he unsuccessfully tried to install it. Thereafter, an employee of Radio Shack agreed to "complete the installation of the cable television at Stoney's Pub." D.I. 28 at ¶ 4. When the Radio Shack employee installed the equipment, he asked Stone for his "personal credit card number and account and home address," which Stone claims resulted in his residential information appearing on his DirecTV account. *Id.* Stone denies using any interception device, such as a "black box." Additionally, he neither advertised, required a cover charge, raised prices, nor had a larger crowd on the night of the fight.

## IV. Analysis

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the parties dispute a material fact, it is inappropriate for the court to grant a motion for summary judgment.[1] However, the parties' disagreement must be genuine.[2] A genuine issue of fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248 (citations omitted).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That party can meet this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Further, a party opposing a supported motion must present evidence showing that there is a genuine issue of material fact, rather than relying on the pleadings.[3] The court should grant summary judgment if either party "fails to make a showing sufficient to establish the

1. *See Anderson v. Liberty Lobby, Inc., et. al.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

2. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for sum-

mary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

3. Rule 56(e) provides that the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

existence of an [essential element] ... on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of [that] ... party's case necessarily renders all other facts immaterial." *Id.*

When reviewing a motion for summary judgment, a court must evaluate the facts in a light most favorable to the nonmoving party drawing all reasonable inferences in that party's favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The court should grant the motion "unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251, 106 S.Ct. 2505. In deciding a motion, the court should apply the evidentiary standard of the underlying cause of action. *See id.* at 251–52, 106 S.Ct. 2505.

> In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.... The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.

*Id.* at 251, 106 S.Ct. 2505.

**B. 47 U.S.C. §§ 553, 605**

Section 553 prohibits the unauthorized interception or reception of cable services. Under subsection (c), a private right of action exists for aggrieved parties and authorizes a successful plaintiff to recover reasonable attorney's fees, costs, and either actual damages plus the defendant's profits, or statutory damages ranging from $250 to $10,000. The statute permits the court to increase a damage award up to

$50,000, if it finds that the defendant acted willfully and for commercial gain. However, the statute also allows the court to reduce an award to $100 if the defendant was unaware that his actions constituted a violation.

Section 605 prohibits the unauthorized publication or use of interstate or foreign communications by wire or radio. Although inartfully drafted, a careful reading of § 605(a) reveals that one violates the statute if he: (1) intercepts and publishes the contents of radio communications to any person; (2) receives interstate or foreign communications by radio, and uses such communications for his, or some other person's benefit;[4] or (3) publishes or uses the contents of an intercepted radio communication for his, or some other person's benefit, with the knowledge that the communication was intercepted[5].

Moreover, § 605(e)(4) prohibits one from modifying equipment when that person knows that the "equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)...."

Section 605 allows a private right of action and awards full costs and reasonable attorney's fees to prevailing plaintiffs. Like § 553, under § 605 the plaintiff may recover actual damages in addition to the defendant's profits resulting from the violation, or statutory damages ranging from $1,000 to $100,000. Further, the statute authorizes the court to adjust the award of damages for willful offenses and unintentional violations to a maximum of $100,000 and a minimum of $250 respectively. Finally, under § 605(e)(5), the penalties un-

---

**4.** The "other person" must be someone who is not entitled to the communication.

**5.** Again, the "other person" must be someone who is not entitled to the communication.

der subsection (e) are in addition to other penalties set forth in Chapter 5.

### C. Plaintiff's Complaint

■ Garden City alleges three counts in its complaint claiming violations of both §§ 553 and 605. For the most part, plaintiff alleges that the defendants acted knowingly or intentionally. Only one averment, which is set forth in ¶ 16, alleges conduct without requiring a specific mental state.

Paragraph 16 provides that: "the defendants ... used an illegal satellite receiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast which originated via satellite uplink and then retransmitted via satellite or microwave signal to various cable and satellite systems." D.I. 18 ¶ 16. Although the paragraph does not specify a statutory section, the rest of the count alleges violations of § 605(a). Thus, the court will assume, that in Count I, the plaintiff intended to allege conduct violating § 605(a), rather than § 553.[6]

All of the other allegations contend that defendants acted either knowingly or willfully. As previously discussed herein, Stone has filed a sworn affidavit stating that neither he, nor the other defendants knew that DirecTV had Stoney's Pub listed as a residential account, and that showing the fight was a violation of law. This declaration adequately meets defendants' burden to show that there is a genuine issue of material fact with respect to knowing or intentional conduct. Since plaintiff only alleges intentional conduct in Counts

II and III of the complaint, its motion is denied as to those counts. Likewise, plaintiff's motion is denied as to ¶¶ 15, 18, and 20 of Count I, for the same reason. However, even absent defendants' affidavit, the court would deny plaintiff's motion for summary judgment because of the precedent in this jurisdiction.

### D. Third Circuit Precedent

■ For approximately the last ten years the interplay between §§ 553 and 605 has been the subject of debate, which is evidenced by a circuit split in the manner in which the sections have been applied at the appellate level. Although much of the discussion has occurred at the district court level, a number of Circuit courts have addressed on the issue, including, *inter alia*, the Second, Seventh, and Third Circuits.

The Second Circuit was the first to decide the issue, followed by the Seventh Circuit, which took an opposing view. Although cited by neither party, the interplay between §§ 553 and 605 was addressed by the Third Circuit in *TKR Cable Company v. Cable City*, 267 F.3d 196 (3rd Cir.2001).[7] Although that case dealt specifically with the manufacturing of black boxes, the Third Circuit set forth its interpretation of the relationship between §§ 553 and 605, which applies to the present matter. Thus, a review of the facts and holding of *TKR Cable* is required.

In that case, TKR Cable Company filed suit against manufacturers of cable television descramblers, alleging violations of both §§ 553 and 605. The precise ques-

---

**6.** Plaintiff alleges violations of § 553 in Count III.

**7.** Although the closed-Circuit Licensing Agreement between HBO and SNI (as Licensors) and plaintiff (as Licensee) provides that New York law is controlling, that agreement does not address nor necessarily apply

to this matter and the applicable controlling law. Further, as noted by plaintiff in ¶ 4 of its complaint, the "interception or tortious conversion" occurred within Delaware, a jurisdiction within the purview of the Third Circuit.

tion addressed was "whether § 605, which prohibits the unauthorized interception of radio communications, applies to the sale of cable decoding equipment." *Id.* at 197. The defendants argued that " § 553[was] the sole statutory remedy for cable piracy of signals sent over terrestrial cable lines, and that § 605 applie[d] only against offenders who directly intercept satellite or radio broadcasts as they pass through open air." *Id.* The Third Circuit agreed and held that " § 605 is directed solely at radio transmissions 'to the extent reception or interception occurs prior to or not in connection with' cable distribution, and that § 553 applies to the theft of all signals being transmitted over a cable system." *Id.* at 206.

In reaching its decision, the Third Circuit relied heavily upon its interpretation of the statutory history of § 605. The court explained that although § 605 and its predecessors originally applied to wire communications, Congress narrowed the reach of § 605 to primarily radio communications when it passed the 1968 amendments to the Communications Act.

In support of its holding, the Third Circuit looked to the congressional intent behind § 553, and general principles of statutory construction, finding

> We believe that Congress clearly enacted § 553 with the primary purpose of addressing satellite-initiated cable transactions. Congress created § 553 to address an enforcement gap created by the 1968 modification of § 605, which rendered § 605 applicable only to satellite transmissions insofar as they are actual airborne transmissions. As this gap had been of minimal significance until the

cable industry expansion, Congress could afford to overlook it during much of the interval leading up to [§ 553]. By 1984, however, Congress decided that the need to deter decoder box piracy of satellite-initiated cable television transmissions had become sufficiently pressing to merit legislation. In sum, we believe that both the historical context of these statutes and the expressed intent of Congress support our reading of § 553 as the exclusive means of addressing the defendants' conduct.

*Id.* at 205–06.

Further, in reaching its decision, the Third Circuit expressly considered and rejected the opposing view and approach adopted by the Second Circuit. Finally, the court summed up its holding: "We therefore conclude that § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." *Id.* at 207.

In light of the *TKR Cable* decision, this court cannot adequately evaluate whether defendants' actions were a violation of either §§ 553 or 605 without facts describing the manner in which the Tyson fight was allegedly pirated. Thus, the court must deny plaintiff's motion.[8]

### E. Miscellaneous Issues

#### 1. *Extraneous Issues Raised by Defense*

Defendants raised a number of extraneous issues in their answering brief to plain-

---

**8.** Plaintiff also alleges that defendants' conduct in "mis-registering" the DirecTV account as a residential account constitutes a modification under § 605(e)(4). The court will not address these claims until the facts

surrounding the alleged piracy have been developed and provided. Therefore, if anypart of plaintiff's motion for summary judgment is based on these claims, it is presently denied as moot.

tiff's summary judgment motion. For example, defendants argued that Mike Stone should be dismissed as a defendant and that the affidavit of Joseph Gagliardi, should be stricken from the record. Also, defendants request that the court find that they did not act intentionally. None of these issues are relevant to the present issue: whether the court should grant plaintiff's motion summary judgment.[9] Thus, the court will not rule on those issues at this time.

### 2. *Absence of significant discovery*

Little discover had been completed as of the filing of plaintiff's motion. In fact, it appears from defendants' answering brief, no depositions have been taken. After reviewing the briefs and attached exhibits, clearly neither the legal nor factual issues in this case have been developed. Thus, this prematurely filed motion, completely disregards both the court's time and resources. Remarkably, the motion was filed based on mere allegations of intentional conduct, absent any evidence of defendants' state of mind.

Even more disturbing, however, is the parties' apparent lack of research on the interplay of §§ 553 and 605, and the Third Circuit precedent on this matter, since neither party cited nor discussed the very relevant *TKR Cable* decision.

### 3. *Local Rules*

Finally, controlling precedent for this matter and in this court comes from the Third Circuit. Additionally, the District Court for the District of Delaware has local rules which are to be followed by attorneys participating in cases pending before it. All filings should comply with these rules and any scheduling order entered. Any future filings not in compliance with these rules or inconsistent with any scheduling order, will not be considered by this court.[10]

### 4. *Plaintiff's Motion to Amend*

In March of this year, plaintiff filed an unopposed motion to amend its complaint to correct the spelling of "Michael Stoner" to "Michael Stoney." Plaintiff's motion to amend is denied, with leave to refile, since "Michael Stoney" is not correct. Apparently, "Michael Stone" is the correct name of the defendant. Presumably, his name was spelled correctly in his sworn affidavit, as evidenced by his signature thereon, and as contained in the DirecTV records attached as exhibits to plaintiff's opening brief.[11]

## F. Conclusion

For the reasons set forth herein, plaintiff's motion for summary judgment (D.I.25) is DENIED. The plaintiff's motion to amend its complaint (D.I.17) is DENIED with leave to refile.

An order consistent with this opinion will follow.

---

**9.** There is no indication that defendants have cross-moved for summary judgment on these issues. Rather, the raising of these issues have been limited to a few paragraphs in defendants' answering brief to *plaintiff's* motion for summary judgment.

**10.** The court directs counsel to its local rules readily located at the district's web page ( *http://www.ded.uscourts.gov/Index.htm),* under the heading "Local Rules" for future reference.

**11.** Defendants urged this court to strike the affidavit of Joseph Gagliardi, which contains conclusory statements, comments not within the personal knowledge of the affiant and lacking in relevant facts. In light of this decision denying plaintiff's motion, defendant's request is moot.